# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| YAKOV G. DRABOVSKIY | : | DOCKET NO. 2:07-cv-1385 |
|---|---|---|
| | | SECTION P |
| VS. | : | JUDGE TRIMBLE |
| J. P. YOUNG, WARDEN | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed by Yakov G. Drabovskiy ("Petitioner") pursuant to 28 U.S.C. § 2241. [Doc. 1]. This matter has been referred to the undersigned for report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner has been under a final removal order since April 6, 2007, and he has been in post-removal order detention since that time. In his petition, he challenges his post-removal order detention as being indefinite and unconstitutional. He claims that there is no significant likelihood of his being removed in the reasonably foreseeable future. In response to the petition, the government argues that petitioner has hampered the removal process by failing to cooperate with the government's attempts to secure travel documents for Petitioner to be removed to Russia.

Based upon the evidence in the record, the undersigned determined that an evidentiary hearing was necessary for the adjudication of the petition. An evidentiary hearing was held on May 27, 2008. [*See* Doc. 37]. Based on the evidence adduced at the hearing and the applicable law, it is **RECOMMENDED** that the petition for *habeas corpus* be **DENIED**.

## BACKGROUND

Petitioner was born in the Republic of Karelia, in the former Soviet Union, on December 20, 1948, and entered the United States, at New York City, as a refugee on December 27, 1990. [Doc. 14, attachment #2, p.3]. Petitioner's status was adjusted to that of a lawful permanent residence on July 31, 1992. *Id.*

On August 30, 2001, Petitioner was indicted by a federal grand jury of the United States District Court for the Eastern District of Kentucky for conspiracy to distribute and the possession and distribution of controlled substance in violation of various federal criminal laws . [Doc. 14, attachment #2, p.4-25]. Petitioner was convicted and sentenced to imprisonment in the custody of the United States Bureau of Prisons for forty-one months. [Doc. 14, attachment #2, p.26-31]. On February 19, 2004, the United States Immigration and Customs Enforcement ("USICE") issued an immigration detainer to the Warden, Ashland FCI, Ashland, Kentucky. [Doc. 14, attachment #2, p.32].

On March 22, 2007, Petitioner was served with an immigration warrant for his arrest. [Doc. 14, attachment #3, p.5]. Petitioner was also served with notification that he was to be detained within the custody of the USICE pending a final determination of whether he was to be allowed to remain within the United States or ordered removed. [Doc. 14, attachment #3, p.6]. Petitioner did not request a redetermination of this custody determination. *Id.* On April 6, 2007, Petitioner was ordered removed to Israel with removal to Russia[1] in the event that Israel would not accept Petitioner. [Doc. 14, attachment #3, p.7]. Petitioner waived appeal of the removal decision of the Immigration Judge. *Id.*

On April 11, 2007, the USICE transmitted to the Consulate General of Israel, Houston,

---

[1] Section 241(b)(1)(C) of the INA [8 U.S.C. §1231(b)(1)(C)] permits removal to an alternative country if the alternative country of removal is the country of birth or if the alien is citizen, subject or national of the alternative country.

Texas, a request for Acceptance of Alien to which the Consul General responded that Petitioner would not be permitted to enter Israel upon his removal from the United States. [Doc. 14, attachment #3, p.8].

On April 11, 2007, a request for a travel document was also made upon the Consulate General of Russia, Houston, Texas. [Doc. 14, attachment #3, p.9-10]. During interviews of Petitioner relating to his completing a passport application to be submitted to the Government of Russia, Petitioner told immigration officials that he did not want to return to Russia. Petitioner requested on his passport application that the Russian Consulate deny him a travel document. [Doc. 14, attachment #3, p.28]. Although Petitioner filled out documents in Russian, the government subsequently obtained translations of the Russian consular questionnaires. On one questionnaire, Petitioner answered that he did not wish to provide Russian officials with information or provide documents relating to relatives, year of birth, place of birth, names, addresses and other information. [Doc. 14, attachment #3, p.29-31]. In addition, Petitioner stated that he was not asking to return to Russia and did not intend to return to Russia. *Id*. On a different questionaire, Petitioner again refused to provide information about himself and denied that he was a citizen of Russia. Petitioner also stated that he did not intend to return to Russia and that it would be in the best interest of the Government of Russia to refuse to accept him. [Doc. 14, attachment #3, p.32-33].

On June 19, 2007, Petitioner was the subject of a post-order custody review undertaken pursuant to the provisions of Title 8, Code of Federal Regulations, Section 241.4(h) and based upon consideration of the factors set forth within Title 8, Code of Federal Regulations, Section 241.4(f) as required by Section 241.4(h)(3).5 [Doc. 14, attachment #4, p.1]. The review team

specifically noted that Petitioner had consistently refused to provide sufficient information, consistently refused to assist in the acquisition of a travel document from Russia and noted his consistent refusal to return to Russia. As a result of petitioner's failure to provide the Russian Consul General with sufficient information, Russian officials could not begin an investigation into his identity. The review team considered Petitioner to be actively engaged in hampering his removal and recommended Petitioner's continued detention. The Acting Field Office Director order Petitioner continued in the custody of USICE. [Doc. 14, attachment #4, p.11-12]. The decision of the Field Office Director delineated the numerous times that Petitioner had failed to provide sufficient information to Russian Consulate officials, his consistent refusal to assist in obtaining a travel document and his request to the Russian Consulate General to deny to him a travel document because Petitioner did not intend to return to Russia. *Id*.

Petitioner was served with separate Forms I-229(a) and instruction sheets during July, August and September, 2007, [Doc. 14, attachment #4, p.13], but Petitioner persisted in his refusal to complete a passport application for his return to Russia and refused to assist with the acquisition of a travel document. Since he was ordered removed from the United States on April 6, 2007, Petitioner has repeatedly refused to complete a Russian passport application and has refused to return to Russia. USICE has reviewed Petitioner's status at 90-day intervals and continued to order Petitioner to remain in custody.

In his pre-hearing statement, Petitioner noted that the Russian Federation did not exist at the time that he entered the United States, and Petitioner was in fact a citizen of the U.S.S.R. Petitioner cites Russian Federal Law No. 62-FZ on Russian Federation Citizenship[2] and explains

---

[2] The Internet address (URL) cited, http://www.legislationonline.org/legislation.php?tid=11&lid=591&less=false, no longer functions as indicated. Last checked 7/25/2008.

4

that while Article 14, *Admittance of the Russian Federation Citizenship in a Simplified Manner*, does seem to indicate that Petitioner would be eligible for Russian citizenship based on the fact that he was once a U.S.S.R. citizen, Article 16(e), dealing with grounds for rejecting a naturalization application, indicates that because of his felony conviction in the United States, Petitioner's application for citizenship would be rejected. Thus, Petitioner argues that it remains unclear whether he is or has ever been a citizen of Russia.

At the evidentiary hearing on May 27, 2008 the court heard testimony of witnesses and received evidence on the following issues: whether there is a significant likelihood of removing petitioner in the reasonably foreseeable future; whether petitioner has been detained beyond what is reasonably necessary to secure his removal; and whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement.

Petitioner, who explained that he is Jewish, testified that he is unwilling to be removed to Russia because of a documented history of Russsian anti-semitism. Petitioner contended that he did cooperate when he filled out the documents provided by the Russian Consulate. Petitioner asserted that the answers he provided were responsive and that the written statements he made were constitutionally protected expressions of his beliefs and opinions. Petitioner argued that prior case law (apparently referring to *Sertese-Khama v. Ashcroft*, 215 F.Supp.2d 37 (U.S.D.C., DC 2002)) supports his position that the answers he provided in response to questions on the paperwork submitted by the Russian Consulate did not amount to a refusal to cooperate. On the contrary, Petitioner contends that he cooperated to the extent necessary for the Russian government to reach a determination, and that Russia has officially denied the request to remove Petitioner to Russia.

In addition, Petitioner asserted that he had corresponded with several governments and consulates and that the governments of Italy and Iceland expressed a willingness to accept him.[3] In support of this assertion, Petitioner filed a copy of the response from the Italian Consulate in Houston, Texas, dated January 11, 2008. [Doc. 23, p.4].

**Issue Presented**

The issue before the court is whether petitioner's continued detention pending the execution of the April 6, 2007 order is lawful. Petitioner challenges his detention, arguing that his removal is not likely to occur in the reasonably foreseeable future. The Government contends that petitioner has not demonstrated that his removal is not likely to occur in the reasonably foreseeable future, because he has not made a true effort to cooperate with the removal process.

**LAW AND ANALYSIS**

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. 8 U.S.C. § 1231 (a)(1)(A)(the Immigration and Nationality Act). Detention beyond the removal period is authorized when "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).[4]

In *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), the United States Supreme Court held that

---

[3] In a subsequent filing, Petitioner asserted that both Germany and Denmark had also responded favorably to his requests in the time since the hearing. [Doc. 43].

[4] (C) Suspension of period
  The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires *or acts to prevent the alien's removal subject to an order of removal.* (emphasis added).

in order for post-removal detention under 8 U.S.C. §1231 to be constitutional, it must be limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 121 S.Ct. at 2498. The Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Thus, merely meeting the six-month detention period does not require automatic release, but rather at that point there must be a determination of whether there is a significant likelihood of petitioner's removal in the reasonably foreseeable future. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), citing *Zadvydas*, 121 S.Ct. at 2505. Further, "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Id*. In order to show that his removal is not likely to happen in the reasonable foreseeable future, petitioner must show that he has made a "full and honest effort to secure travel documents." *Davis v. Gonzalez*, 482 F.Supp.2d 796, 802 (W.D.Tex. 2006) citing *Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003). "[T]he risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003); See also *Ayigba v. Young*, 2007 WL 2736678, *5 (W.D.La. 2007); *Rosario v. Gonzalez*, 2007 WL 1232207, *5 (W.D.La.

7

2007); *Amadi v. Young*, 2007 WL 855358, *3 (W.D.La. 2007). In *Pelich v. INS*, *supra*, the court denied the § 2241 petition, finding that the petitioner was "responsible for his plight" because he refused to complete the appropriate passport application necessary for his removal. Thus, when an alien is the cause of his own detention, he cannot assert a viable constitutional challenge to his indefinite detention because "the detainee controls the clock." *Lema*, 341 F.3d at 856 citing *Pelich*. Under such circumstances, the "detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future ...." *Id*.

Here, petitioner has been in post-removal-order detention since April 6, 2007, a period greater than six months. However, in order for petitioner to secure his release from custody, it must be shown he has been detained beyond a period reasonably necessary to bring about his removal from the United States, and that there is no significant likelihood of removal in the reasonably foreseeable future despite his full cooperation with the government's attempt to have him remove.

Despite Petitioner's testimony during the evidentiary hearing that he has cooperated fully with USICE's efforts to remove him, the court finds otherwise. Petitioner admits that he filled out applications provided by the Russian Consulate as translated by the government, stating "I don't wish to provide you with the information which you requested," [Doc. 14, attachment #3, p.29-31], and "I do not intend to go to your country," *Id*., and "I feel that this is not in your interests; not in the interests of your country….[i]t will be to your and my satisfaction if you refused to accept me." [Doc. 14, attachment #3, p.32-33]. Petitioner contends that these responses are a form of constitutionally protected speech and, in light of *Sertese-Khama v. Ashcroft*, 215 F.Supp.2d 37, do not rise to the level of hampering.

8

However, *Sertese-Khama* is clearly distinguishable. In that case, during an interview with the Liberian Consul the petitioner said that he did not want to return to Liberia and thereafter the government of Liberia decline to issued the documents necessary to effectuate his removal. *Sertese-Khama v. Ashcroft*, 215 F.Supp.2d at 51. For that reason the government contended that the petitioner had hampered their efforts to deport him and refused to release him to an order of supervision. *Id*. But the court noted that there was no allegation that the petitioner refused to request travel documents or denied his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents. *Id*. The court ruled in favor of the petitioner, explaining that "an alien's statement of a lack of desire to return to his country of origin, without more," does not amount to a bad faith failure to cooperate. *Id*.

Here, Petitioner refused to request travel documents from the Russian Consulate. Petitioner denied that he is a citizen of Russia. He repeatedly refused to give background and demographic information necessary for the Russians to process a request for travel documents. In *Sertese-Khama* the alien cooperated and expressed his opinion; in the instant case, Petitioner failed to accurately and completely provide the information request by consular officials. That Petitioner expressed an opinion about Russia is irrelevant—what he did not say is decisive.

By failing to provide complete and accurate information, the court finds that Petitioner has hampered USICE's efforts to remove him. Accordingly, the court finds that the removal period has been tolled under the statutory provision of 8 U.S.C. § 1231(a)(1)(C) and the applicable case law. See *Pelich*, *supra*. As in *Pelich*, Petitioner is "responsible for his plight." He has not provided the Russian Consulate with an honest and unequivocal request for travel documents. Under these circumstances, Petitioner "cannot convincingly argue that there is no

9

significant likelihood of removal in the reasonably foreseeable future ...."

As to Petitioner's assertion that USICE is unreasonably preventing his removal to another nation willing to accept him, the court finds no evidence to support this assertion. Petitioner contends that Italy, Iceland, Germany and Denmark have agreed to accept him. The record contains no letters from officials of the latter three nations, but the court has reviewed correspondence from the Italian Consulate in Houston. [Doc. 23, p.4]. The court notes that, contrary to Petitioner's interpretation, the letter from the Italian Consulate is a denial or, more accurately, a polite non-answer in which Consular officials explain that "Italian Consulates or Embassies abroad are not entitled to receive request [sic] of political asylum." *Id*. Petitioner has not provided copies of any similar documents from Iceland, Germany, or Denmark. The court thus finds no evidence that any other nation is willing to provide travel documents to effectuate Petitioner's removal.

## CONCLUSION

For the reasons discussed above, the undersigned finds that Petitioner has failed to carry his burden demonstrating that there is no likelihood of his removal in the reasonably foreseeable future or that he has been detained beyond what is reasonably necessary to bring about his removal from the United States.

Accordingly,

**IT IS RECOMMENDED** that this petition be **DENIED AND DISMISSED without prejudice**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and

recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 30th day of September, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE